FISHER, Circuit Judge,
concurring:
I concur, but write to explain my particular reasons for rejecting the Commissioner’s position in this case.
The parties provide dueling interpretations of the “arm’s length standard” as applied to the ESO costs that Xilinx and XI did not share. Xilinx contends that the undisputed fact that there are no comparable transactions in which unrelated parties share ESO costs is dispositive because, under the arm’s length standard, controlled parties need share only those costs uncontrolled parties share. By implication, Xilinx argues, costs that uncontrolled parties would not share need not be shared.
On the other hand, the Commissioner argues that the comparable transactions analysis is not always dispositive. The Commissioner reads the arm’s length standard as focused on what unrelated parties would do under the same circumstances, and contends that analyzing comparable transactions is unhelpful in situations where related and unrelated parties always occupy materially different circumstances. As applied to sharing ESO costs, the Commissioner argues (consistent with the tax court’s findings) that the reason unrelated parties do not, and would not, share ESO costs is that they are unwilling to expose themselves to an obligation that will vary with an unrelated company’s stock price. Related companies are less prone to this concern precisely because they are related — i.e., because XI is wholly owned by Xilinx, it is already exposed to variations in Xilinx’s overall stock price, at least in some respects. In situations like these, the Commissioner reasons, the arm’s length result must be determined by some method other than analyzing what unrelated companies do in their joint development transactions.
Under Xilinx’s interpretation, § 1.482-1(b)(1) and § 1.482-7A(d)(l) are irreconcilable. The latter specifies that controlled parties in a cost sharing agreement must share all “costs ... related to the intangible development area,” and that phrase is explicitly defined to include virtually all expenses not included in the cost of goods. The plain language does not permit any exceptions, even for costs that unrelated parties would not share, so each provision mandates a different result.
Under the Commissioner’s interpretation, § 1.482-7A(d)(l)’s “all costs” require *1198 ment is consistent with § 1.482-l(b)(l)’s arm’s length standard and controls. In particular, the Commissioner argues that, because there are material differences in the economic circumstances of related and unrelated companies in relation to cost-sharing agreements like the one in this case, it was proper for the IRS to require that in this narrow context the arm’s length result should be defined by the “all costs” requirement.
Having thoroughly considered not only the plain language of the regulations but also the various interpretive tools the parties and amici have brought before us, including the legislative history of § 482, the drafting history of the regulations, persuasive authority from international tax treaties[1] and what appears to have been the understanding of corporate taxpayers in similar circumstances and of others,[2] I conclude that Xilinx’s understanding of the regulations is the more reasonable even if the Commissioner’s current interpretation may be theoretically plausible. Traditional tools of statutory construction do not resolve the apparent conflict in these regulations as applied to Xilinx, and the Commissioner’s attempts to square the “all costs” regulation with the arm’s length standard have only succeeded in demonstrating that the regulations are at best ambiguous.[3]
Although I would not go so far as Xilinx in characterizing the Commissioner’s interpretation as merely a “convenient litigating position,” Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 213, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), we need not defer to it because he has not. clearly articulated his rationale until now. See United States v. Thompson/Ctr. Arms Co., 504 U.S. 505, 518-19 & n. 9, 112 S.Ct. 2102, 119 L.Ed.2d 308 (1992) (declining to defer to an agency interpretation of a tax statute where no prior guidance went directly “to the narrow question presented”). Indeed, I am troubled by the complex, theoretical nature of many of the Commissioner’s arguments trying to reconcile the two regulations. Not only does this make it difficult for the court to navigate the regulatory framework, it shows that taxpayers have not been given clear, fair notice of how the regulations will affect them.[4]
Accordingly, I join Judge Noonan in affirming the tax court. These regulations *1199 are hopelessly ambiguous and the ambiguity should be resolved in favor of what appears to have been the commonly held understanding of the meaning and purpose of the arm’s length standard prior to this litigation.

. I agree that the 1997 United States-Ireland Tax Treaty, along with Treasury's Technical Explanation, although not addressing the specific regulatory conflict at issue here, is evidence that Xilinx's understanding of the arm’s length standard was and is quite reasonable. The treaty, and others like it, reinforce the arm's length standard as Congress' intended touchstone for § 482.

. Apparently Xilinx's understanding was widely shared in the business community and tax profession. See Brief of PricewaterhouseCoopers LLP, Deloitte Tax LLP and KMPG LLM as Amici Curiae on the Petition for Rehearing at 5-6 (describing a "global consensus”); Brief of Cisco Systems, Inc. and Thirty-Two Other Affected Companies as Amici Curiae on the Petition for Rehearing at 3 (describing "settled business expectations”); cf. Brief of Former U.S. Treasury and Internal Revenue Service Officials at 3-5.

. The dissent invokes the prior, withdrawn majority opinion. Dissent at 4613-14; see Xilinx, Inc. v. CIR, 567 F.3d 482 (9th Cir.2009), withdrawn January 13, 2010. In writing that opinion, I was persuaded that the arm’s length standard and the all costs regulation were in conflict, and that the more specific of the two should control. See 567 F.3d at 486. I no longer share Judge Reinhardt's confidence in that resolution because the Commissioner’s response to Xilinx’s petition for rehearing declined to fully endorse its reasoning. Instead, the thrust of the Commissioner's response was that our result was correct, even though our reasoning was not.

. It is an open question whether these flaws have been addressed in the new regulations Treasury issued after the tax years at issue in this case. See 26 C.F.R. § 1.482-7T(a) & (d)(1)(iii) (2009) (stating explicitly that ESOs *1199 are costs that must be shared and that the all costs requirement is an arm's length result).